IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHARLA HARRIS**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-2307-L** |
| | § | |
| **CITY OF BALCH SPRINGS, WILLIAM** | § | |
| **EDWARD MORRIS, VERLYN Z.** | § | |
| **SMITH, JULIE B. GREER, CHARLENE** | § | |
| **RUSHING, and KAREN E. GRAY**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants Verlyn Z. Smith, Julie B. Greer, Charlene Rushing, and

Karen E. Gray's Motion to Dismiss, filed October 10, 2011; and Defendant William Edward

Morris's Motion to Dismiss, filed November 14, 2011.  After careful consideration of the motions,

responses, briefs, replies, record, and applicable law, the court **grants in part** and **denies in part**

Defendants Verlyn Z. Smith, Julie B. Greer, Charlene Rushing, and Karen E. Gray's Motion to

Dismiss; and **grants in part** and **denies in part** Defendant William Edward Morris's Motion to

Dismiss.  The court, however, as herein set forth, **allows** Plaintiff to replead certain claims.

## I.     Background

Charla Harris ("Plaintiff" or "Harris") filed this action originally in the 191st Judicial District

Court, Dallas County, Texas, on August 11, 2011, against the City of Balch Springs ("Balch

Springs" or the "City"); City Manager William Edward Morris ("Morris"); and Balch Springs City

Council Members Verlyn Smith, Julie B. Greer, Charlene Rushing, and Karen E. Gray (collectively,

the "Council Members"), all of whom are collectively referred to as "Defendants."  She brings suit

for an alleged breach of an Equal Employment Opportunity Commission ("EEOC") Settlement Agreement ("Agreement"), alleged violations of her civil rights, and alleged discriminatory and retaliatory conduct on the part of Defendants.  Harris contends that Balch Springs breached the Agreement by: (1) allowing Morris to retaliate against her after she had filed an EEOC charge; (2) allowing Morris to fire her without authorization from the City Council; (3)  failing to create a clear and effective line of communication between the City Manager's Office and the Balch Springs Recreation Center; (4) failing to restore full management authority of the Balch Springs Recreation Center to her; (5) failing to participate in good faith in the implementation of a job growth plan between Plaintiff and Sam Allen; and (6)  failing to publish a written policy dealing with the handling of cash transactions for all City departments.

With respect to alleged violations of her civil rights, Harris contends that all Defendants violated her procedural due process rights under 42 U.S.C. § 1983; violated her substantive due process rights under 42 U.S.C. § 1983; discriminated against her because of her race in violation of 42 U.S.C. § 1983; deprived her of her constitutional right to associate freely and exercise her political rights under 42 U.S.C. § 1983.[1]  Pl.'s Original Pet. 9, 11-14.  Harris further contends that Balch Springs discriminated against her because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Texas Commission on Human Rights Act ("TCHRA").  As a result of the alleged breach and violations, Plaintiff seeks damages, benefits, reinstatement, costs of court, and attorney's fees; a declaration from the court that certain action taken against her was illegal; and an injunction ordering Defendants to allow her to return to work.

---

[1] As a point of clarification, section 1983 secures or guarantees no rights.  It "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

On September 7, 2011, Defendants removed the state court action to federal court on the basis of federal question jurisdiction because Plaintiff asserted claims pursuant to several federal statutes. The Council Members Defendants and Morris have filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Alternatively, Morris requests that the court require Plaintiff to file a reply pursuant to Rule 7 of the Federal Rules of Civil Procedure.

## II.    Standards

### A.    Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer

more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355

F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

### B.    Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A defendant official must affirmatively plead the defense of qualified immunity.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  The individual Defendants have pleaded this defense.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right.  If the record sets forth or establishes no violation, no further inquiry is necessary.  On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct.  *Id.*  The Court relaxed this

mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not

merely that the conduct was otherwise improper.  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994).  Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him.  If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. at 341.  Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue.  *Foster*, 28 F.3d at  429.  To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful."  *Anderson*, 483 U.S. at 640.  For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances."  *Pierce v. Smith*, 117 F.3d at 882; *Stefanoff v. Hays Cnty.*, 154 F.3d at 525.

In cases involving claims of qualified immunity, it is often appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *Id.* A plaintiff generally must be given the opportunity to reply with greater specificity in such cases before the court rules on a defendant's dispositive motion. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1996).

A reply, however, is only required when the claims in the complaint are not supported "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434. If "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss. *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000).

## III. Defendant Morris's Motion to Dismiss

### A. Timeliness of Motion

As an initial matter, Harris contends that Morris's motion is untimely. She relies on Rule 12(b) of the Federal Rules of Civil Procedure. This Rule provides in part: "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." *Id.* Among the defenses included is a motion made pursuant to 12(b)(6), failure to state a claim upon which relief can be granted; however, for the reasons that follow, the court rejects Harris's argument and finds it disingenuous.

First, Morris and other Defendants filed their answer in state court on September 6, 2011, before the action was removed to federal court.  At the time Defendants filed their answer, they were not governed by Rule 12(b) or federal procedure.  This court is having an extremely difficult time understanding how the provision of the rule would apply to an act that was governed by the Texas Rules of Civil Procedure and that occurred *before* the federal rules came into play.

Second, a Rule 12(b)(6) motion is exempted from waiver by the clear language of Federal Rule of Civil Procedure 12(h)(2).  Despite the language in Rule 12(b), a defense of failure to state a claim upon which relief can be granted is specifically allowed at different stages of litigation—in a responsive pleading, by motion under Rule 12(c), and at trial.  Fed. R. Civ. P. 12 (h)(2).

Third, if a defendant files an answer and asserts "failure to state a claim upon which relief can be granted" as a defense, courts will treat a postanswer motion to dismiss as having been timely filed and properly before the court.  *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 575-76 (N.D. Tex. 2005) (citations omitted).  Defendants asserted this defense in their state court answer, and the court may consider the motion to dismiss, even though it was filed after the answer was filed.

Fourth, to consider the motion untimely would exalt form over substance and not comport with judicial economy.  The court sees no purpose served by ruling that the motion is untimely and must be considered at a later time after discovery has taken place.

Finally, Harris suffers no legal prejudice and recognizes this by encouraging the court to consider Morris's motion as one for judgment on the pleadings under Rule 12(c).  Whether the motion is considered under Rule 12(b)(6) or 12(c) is of no moment, as the standard for deciding a 12(b)(6) motion and 12(c) motion is the same.  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.

2008) (citation omitted).  For each of these reasons, Harris's objection that the motion is untimely is without merit.

###### B.      Did Plaintiff have a Property Interest in her Employment?

####### 1.      Creation of property interest

Whether Harris has a claim for deprivation of her property without due process of law "depends on [her] having had a property right in continued employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (footnote and citations omitted).  Property interests do not have their origin in the United States Constitution. "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. *Id.* (quoting *Roth*, 408 U.S. 564, 577 (1972)).  The Fifth Circuit succinctly states the law as follows:

> A person's interest in a benefit is a property interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.  This Court has noted that such an entitlement may be expressed in a contract, a statute, or through the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent sufficient cause.  Once a property interest is found to exist, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.

*Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988) (quotation marks, footnotes, and citations omitted).  "[A] state or local government requirement of *good* or *just* cause for termination precludes arbitrary termination and therefore creates a property right in continued employment free from arbitrary termination."  *Id.*  (footnote and citations omitted) (emphasis in original).

A court must first determine whether the Due Process Clause[2] applies to a public employee's employment.  *Loudermill*, 470 U.S. at 541.  If the Due Process Clause applies, the court must determine "what process is due" the employee.  *Id.* (citation omitted).  The Due Process Clause requires that a person "be given an opportunity for a hearing *before* [she] is deprived of any significant property interest."  *Id.* (footnote and citation omitted).  If the public employee "has a constitutionally protected interest in [her] employment," the Due Process Clause procedurally requires "some kind of hearing" before she may be discharged.  *Id.* at 542 (citing *Roth*, 408 U.S. at 569-70).  Accordingly, if the employee does not have a constitutionally protected property interest, the Due Process Clause does not apply, and she is not entitled to a hearing.  *Id.*; *Muncy v. City of Dallas*, 335 F.3d 394, 396 n.1 (5th Cir. 2003) ("[T]he Constitution only requires process in circumstances in which the aggrieved party has been deprived of a protected interest.").

## 2.    At-will Employment

Morris contends that Harris was an at-will employee.  "At will employment exists when the parties do not limit the ability of either employer or employee to terminate employment at their will."  *Goodyear Tire & Rubber Co. v. Portilla*, 879 S.W.2d 47, 48 n.1 (Tex. 1994).  "The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary."  *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) (citations omitted); *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723 (Tex. 1990) (citation omitted).  "The employment-at-will doctrine has always been subject to specific contractual agreement defining an exception."  *Portilla*, 879 S.W.2d

---

[2] The Due Process Clause provides that a state may not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.

at 51.  Further, a "disclaimer in an employee handbook . . . negates any implication that a personnel procedures manual places a restriction on the employment-at-will relationship."  *Dutschmann*, 846 S.W.2d at 283 (citations omitted).  The Fifth Circuit aptly summarizes the at-will employment doctrine as follows:

> Employment in Texas is presumed to be at-will.  An at-will employee may be discharged for "good cause, bad cause, or no cause at all."  To overcome the at-will presumption "the employer must 'unequivocally indicate a definite intent . . . to be bound not to terminate the employee except under clearly specified circumstances.'"

*Sawyer v. E.I. DuPoint De Nemours & Co.*, 689 F.3d 463, 467 (5th Cir. 2012) (citations omitted).

As the employment at-will relationship may only "be altered by contract" or by "express rules or policies limiting the conditions under which an employee may be terminated," *Muncy*, 335 F.3d at 398 (citations omitted), Harris must set forth allegations to demonstrate that one of these ways applied to her employment at Balch Springs.  She has failed to do so.

The Employee Personnel Policy and Regulations Handbook ("Handbook") of Balch Springs provides as follows with respect to the classification of its employees:

> Unless specifically contracted by the City Council, all employees of the City of Balch Springs, whether full-time, part-time, temporary or seasonal, are at-will employees.  All such employees may be fired at any time for no cause.  No provision of this policy manual alters the at-will status of each employee of the City.  It is expressly understood that this policy manual does not confer any property right in continued employment to any employee, and the at-will employment doctrine can only be waived by the City Council in a contract for employment.

Emp. Pers. Pol. & Regs. Hbk. 2-3.  In light of this section in the Handbook, all employees of Balch Springs are employees at-will, and the at-will doctrine can only be waived or changed by the Balch Springs City Council.  Harris has not alleged that the City Council waived or made any changes to

the at-will employment status of its employees.  Further, Harris has not cited any provision of the

Charter, Handbook, a City ordinance, a document, or state law in her Petition or briefing to allege

that she was not an at-will employee, except the Agreement between her and the City that was

brokered by the EEOC.  At the motion hearing on August 23, 2012, Harris's counsel acknowledged

that no documents exist other than the Agreement.

Harris contends that the Agreement[3] changed her status from an at-will employee to one with

---

[3] The Agreement provides in pertinent part:

l.      In exchange for the promises made by RESPONDENT pursuant to Charge Number
450201003172.  CHARGING PARTY; Charla Harris agrees not to institute a law suit [sic] under
Title VII of the Civil Rights Act of 1964, as amended, based on EEOC charge # 450201003172.

2.      Further we agree that submission of this agreement to EEOC will constitute closure of EEOC
Charge Number 450201003172[.]

3.      It is understood that this agreement does not constitute an admission by Respondent of any
violation of any law, including but not limited to Title VII of the Civil Rights Act of 1964, as
amended.

4.      Respondent agrees that there shall be no discrimination or retaliation of any kind against
Charging Party as a result of filing this charge or against any person because of opposition to any
practice deemed illegal under Title VII, as a result of filing this charge, or for giving testimony,
assistance or participating in any manner in an investigation, proceeding or a hearing under the
aforementioned Act.

5.      This document constitutes the final and complete statement of the agreement between the
Parties.

6.      The parties agree that the EEOC is authorized to investigate compliance with this agreement
and that this agreement may be specifically enforced in court by the EEOC or the parties and may
only be used as evidence in a subsequent proceeding in which a breach of this agreement is alleged.

7.      As evidence of a good faith effort to resolve EEOC Charge Number 450201003172 and in
exchange for promises made herein[,] the Respondent City of Balch Springs, and Charging Party
Charla Harris [sic] the following proposal of Settlement: The Respondent City of Balch Springs,
agrees to Create [sic] a clear and effective line of communication between the City Managers[sic]
office and the Balch Springs Recreation Center.  The Respondent will restore full management
authority of the Balch Springs Recreation Center to the Charging Party Charla Harris with Sam Allen
acting as buffer, coupled with a growth plan for the Charging Party developed jointly by Charging
Party and Sam Allen.  The Respondent will publish a written policy dealing with handling of cash

a constitutionality protected property interest because terminating her without cause was inconsistent with the terms and provisions of the Agreement.  The court disagrees, and Plaintiff cites no authority to support this contention.

The EEOC is charged with the responsibility of attempting to eliminate "alleged unlawful employment practice[s] by informed methods of conference, conciliation, and persuasion."  42 U.S.C. § 2000e-5(b).  The obvious purpose of this provision is to allow resolution of a charge of discrimination without the necessity of formal litigation.  The court is unaware of any authority, and Plaintiff has cited none, that holds that reaching an agreement with the EEOC regarding alleged discrimination or retaliation, without more, transforms the at-will status of an employee to that of an employee with a constitutionally protected property interest.  As federal law makes clear, whether a property interest exists is determined by state law.  *Loudermill*, 470 U.S. at 538; *Evans*, 861 F.2d at 848.  Unless an agreement unequivocally indicates a definite intent by the employer not to terminate an employee, except under clearly specified circumstances, such agreement does not alter the at-will status of an employee.  *Sawyer*, 689 F.3d at 467.  The Agreement contains no specific provision that sets forth or defines an exception to Harris's at-will status, s*ee Portilla*, 879 S.W. 2d

---

transactions for all departments with the City of Balch Springs and agrees to apply this policy uniformly to Charging Party's department.  Further, the Respondent will provide the necessary soft ware [sic] for the computers in the Recreation Center in order to accomplish reporting requirements.  Lastly, the Respondent agrees to restore three (3) weeks of sick leave to the Charging Party's leave bank.

8.      The Parties agrees [sic] to keep the terms of this Agreement confidential and shall not reveal the terms of this Agreement except to his/her Attorney, Accountant, immediate family members or spouse.

at 51; and there were no express rules or policies that limited the conditions under which Harris could have been terminated, *Muncy*, 335 F.3d at 398.

The EEOC Agreement does not prevent Morris or Balch Springs from terminating Harris for unacceptable job performance or violation of City personnel rules, and the court has seen no authority that Congress intended the conciliation process to be so expansive as to rewrite the at-will doctrine of the state of Texas or any other state.  No local government or employer would ever enter into a conciliation agreement if the agreement is so broad as to undermine or rewrite existing state law.  The Agreement underscores existing law, namely, that Balch Springs is not to discriminate or retaliate against Plaintiff in violation of Title VII, and sets forth other matters to which the City has agreed; however, nothing in the Agreement requires the City to allow Plaintiff to keep her job if her performance is not up to acceptable standards, or if she violates the City's personnel rules.  Of course, if the City violated some express provision of the Agreement, a claim for breach of contract, which Plaintiff has pleaded, may lie; however, neither the Agreement nor the assertion of a breach of contract claim in this instance transforms Plaintiff's status from that of an at-will employee to one with a constitutionally protected property interest.  Accordingly, for the reasons herein stated, the court concludes that Harris did not have a constitutionally protected property interest in her employment, and her procedural and substantive due process claims fail as a matter of law because she has not shown that she is entitled to relief on either claim.[4]  The court's ruling, of course, does not preclude Plaintiff from discovering and producing evidence regarding the Agreement to the extent that it is related to other claims of Plaintiff.

---

[4] This ruling applies with equal force to these claims insofar as Plaintiff asserts them against Defendant Council Members.  As Plaintiff had no constitutionally protected property interest in her job, the Council Members, as a matter of law, cannot be liable to her.

### 3.        Authority to Terminate Harris

There is a dispute between Morris and Harris as to whom had the authority to fire or discharge Harris.  The court addresses this issue because it overlaps and is raised in conjunction with several of Plaintiff's claims, and the court believes the issue requires resolution.  Morris contends that he, as city manager, had the authority to discharge Harris, and Harris contends that only the City Council had the authority to terminate her employment as Director of the Recreation Department.  The source of this dispute is a provision of the Balch Springs City Charter ("Charter").  The applicable provision of the Charter provides:

> *Duties*.  The City Manager shall be empowered to:
> a)    Appoint, and when he/she deems necessary for the welfare of the city, suspend or remove any or all City employees, except those employees which this Charter or state law places under the control and supervision of another authority including but not limited to Department Heads, the City Secretary and Civil Service Employees.

Balch Springs City Charter, art. IV, § 4.01-(4)(a).  Harris contends that her discharge should be set aside because it was unlawful.  Morris contends that the firing was legal because he had the authority to fire Harris.

The court begins its analysis with the rules of statutory construction.  Courts construe city charter provisions pursuant to the same rules that govern the interpretation of statutes.  *Rossano v. Townsend*, 9 S.W.3d 357, 363 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also City of Houston v. Todd*, 41 S.W.3d 289, 297 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).  Resolving "an issue of statutory construction must begin with an analysis of the statute." *Cail v. Service Motors, Inc.*, 660 S.W.3d 814, 815 (Tex. 1983) (citing *Allen v. Pierce*, 689 F.2d 593, 596 (5th Cir. 1982)).  Thus, the court must first determine whether the statute is ambiguous. *Id.* "If the

disputed statute is clear and unambiguous[,] extrinsic aids and rules of statutory construction are inappropriate." *Id.* The term "ambiguous" means that the language of a statute is susceptible to more than one reasonable interpretation. *In re Missouri Pacific R.R. Co.*, 998 S.W.2d 212, 217 (Tex. 1999). Further, when "there is a broad and restrictive clause within a statute, the broad clause is limited or controlled by the restrictive one." *Hammond v. City of Dallas*, 712 S.W.2d 496, 498 (Tex. 1986) (citations omitted). For the reasons that follow, the court determines that the language of the Charter is not ambiguous, and that Morris, as city manager, had the exclusive authority to discharge Harris.

Morris contends that, except in limited circumstances that are not applicable in this case, the city manager has the sole authority to hire and fire city employees. Harris, on the other hand, contends that the provision in question of the Charter restricts the authority of the city manager to discharge department heads and that therefore the power to hire and fire department heads is reserved to the city council, unless another provision of the Charter grants such authority to the city manager. The court disagrees, as Harris misconstrues the operative and controlling language of the Charter provision.

The specific language of the Charter provision over which the parties wage war is "except those employees which the Charter or state law places under the control and supervision of another authority including but not limited to Department Heads, the City Secretary and Civil Service Employees." Within this quoted language is the restrictive clause "which the Charter or state law places under the control and supervision of another authority." A restrictive clause is "a descriptive clause that is essential to the definiteness of the word it modifies." Merriam-Webster's Collegiate Dictionary 1063 (11th ed. 2004). A restrictive clause therefore identifies, limits, or restricts the

noun or pronoun to which it refers.  The court knows from its earlier grammar classes and training that a restrictive clause is traditionally introduced by the word "that" and is not preceded by a comma, although some writers use "which" to introduce a restrictive clause; however, according to a majority of grammarians, the word "that" is much preferred over "which."  As a restrictive clause limits, restricts, or identifies the noun or pronoun to which it refers, such clause is necessary to the meaning of the sentence.  If removing the clause changes the meaning of the sentence, it is a restrictive clause.

Initially, reading the provision of the Charter might cause some pause.  This is because of inartful drafting; however, that the drafter did not craft the provision with the precision of a grammarian does not make it ambiguous.  The restrictive clause in the Charter provision identifies, defines, or limits "those employees" over whom the city manager does not have control and supervision.  If the Charter or state law places an employee under the control or supervision of an authority other then the city manager, the city manager may not suspend or remove such employee. The restrictive clause specifically identifies employees that do not come under the control and supervision of the city manager as those who are placed under another authority pursuant to the Charter or state law.  The additional language after the word "authority," "including but not limited to Department Heads, the City Secretary and Civil Service Employees," while perhaps illustrative, could and should have been omitted by the drafter, as it is not essential or necessary to the meaning of the sentence; however, if the restrictive clause "which the Charter or state law places under the control and supervision of another authority" is omitted, the provision would read "except those employees including but not limited to Department Heads, the City Secretary and Civil Service Employees."  This would change the meaning of the provision of the Charter in question and makes

no sense grammatically.  Moreover, the language of a restrictive clause controls over that of a broad clause or phrase, *Hammond*, 712 S.W.2d at 798, and therefore any meaning that the ending phrase has in the sentence must yield to the language of the restrictive clause.

The court believes that its explanation more than adequately explains why Plaintiff was subject to the control and supervision of the city manager and why the city manager had the authority to discharge her; however, if there is even a scintilla of doubt, it is erased once other provisions of the Charter are examined.  The city secretary, one of the employees referenced in the quoted Charter provision, is appointed by the city council.  Balch Springs City Charter, art. IV, § 4.03-1. That the city secretary is listed in the quoted language and is appointed by the city council reinforces the determination made by the court.  Another provision of the Charter makes it unequivocally clear that the city secretary is under the control and supervision of an appointing authority other than the city manager and therefore cannot be suspended or removed by the city manager.  Likewise, the police chief, city attorney, and fire chief are employees appointed by the city council and not subject to the control and supervision of the city manager, and cannot be suspended or removed by the city manager.  *Id.* art. IV, §§ 4.02, 4.05, and 4.06.

Moreover, the court has pored over the entire Charter, which is part of the pleadings as previously defined, and it found no provision that places  the Director of the Recreation Department under the control and supervision of another authority, and Plaintiff has not cited none.  Likewise, Harris has not identified any state law that places her or her position under the control and supervision of another authority.  If a provision of the Charter or state law places Harris under the control and supervision of an authority other than the city manager, she would be correct in asserting that Morris had no authority to discharge her; however, no part of the pleadings supports Plaintiff's

allegations or argument.  Accordingly, based on the record before the court, Morris had the authority

to discharge Harris, and any claim asserted by Plaintiff that relies solely on the argument that her

firing was illegal because the city manager had no authority to do so necessarily fails as a matter of

law.

### C.      Plaintiff's Liberty Interest Claim

Although Harris asserts a violation of substantive due process, Pl.'s Original Pet. ¶¶ 8.01-

8.05, the correct claim as set forth by the allegations is one for a violation of procedural due process.

In this part of her Petition, she contends that notice of her termination was publicized in that:

> it was sent to all city employees by memo dated May 20, 2011.  The
> City Council was made aware of Plaintiff's objections to the actions
> taken by the City Manager, and either adopted it illegally in executive
> session or ratified it by refusing to afford Plaintiff a public hearing to
> rebut allegations against her.

*Id.* ¶ 8.03.  Plaintiff further contends that the public termination of her contract for employment

implied that the termination was due to misconduct on her part; that such implication was "(1) false,

(2) publicized, and (3) stigmatizing to [her] standing or reputation in the community"; and that she

was "denied the right to a public vote on her employment, and has been effectively barred from

future city employment because of the stigma of having been fired 'for cause' without an

opportunity to clear her name."  *Id.* ¶ 8.04.

A public employee has a liberty interest protected by the Fourteenth Amendment to the

United States Constitution if she can demonstrate, in conjunction with her discharge from public

employment, her employer made a statement or charge that "might seriously damage her standing

and associations in her community" or that "imposed on [her] a stigma or other disability that

foreclose[s] her freedom to take advantage of other employment opportunities."  *Board of Regents*

*of State Colls. v. Roth*, 408 U.S. 564, 573 (1972). The procedural remedy, namely, the process due

such an employee, is the right to a "name-clearing" hearing. *Id.* at n.12; *Rosenstein v. City of*

*Dallas*, 876 F.2d 392, 395 (5th Cir. 1989) (citation omitted), *aff'd in relevant part,* 901 F.2d 61 (5th

Cir. 1990) (en banc). The discharged employee is entitled to a name-clearing hearing only; she is

not entitled to "actual review of the decision to discharge [her]." *Id.* Of course, if the government

employer discharges an employee under the circumstances herein set forth and no opportunity is

provided to clear the employee's name, the employee may recover monetary damages pursuant to

section 1983 for the deprivation of her liberty interest under the Fourteenth Amendment. *Id.*

The Fifth Circuit uses a seven-part "stigma-plus-infringement" test to decide whether section

1983 provides a remedy to a government employee for the denial of a name-clearing hearing.

*Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (citation omitted). Under this test,

the discharged employee must demonstrate or allege facts from which the court can reasonably infer

that:

> (1) [she] was discharged; (2) stigmatizing charges were made against
> [her] in connection with the discharge; (3) the charges were false; (4)
> [she] was not provided notice or an opportunity to be heard prior to
> the discharge; (5) the charges were made public; (6) [she] requested
> a hearing to clear [her] name; and (7) the employer denied the
> request.

*Id.* (footnote omitted).

From the pleadings, the court cannot determine or reasonably infer that the alleged

stigmatizing charges or statements were made public. According to Plaintiff, Morris issued a

termination memorandum to Harris that falsely accused her of "acts of incompetency, neglect of

duty, loitering while on duty, insubordination and refusal to carry out instructions." Pl.'s Original

Pet. ¶ 5.05. There is no allegation in the Petition that the termination memorandum to Harris was

publicized.  Because of this deficiency, Plaintiff will need to plead allegations demonstrating that

this particular memorandum was published.  Moreover, to the extent that Plaintiff's claim is based

on the written notice sent to all City employees, the claim fails as a matter of law because it does

not contain any stigmatizing statements or create a badge of infamy.  The notice states:

> Date:     May 20, 2011
>
> To:       ALL City Employees
>
> From:     Ed Morris, City Manager/Chief of police
>
> Subject:  Termination of Employee Charla Harris
> _____
>
> Effective immediately, Charla Harris is no longer employed as [sic]
> employee of the City of Balch Springs.
>
> Sam Allen, Community Liaison/Assistant to the City Manager, will
> immediately assume all duties and responsibilities as the Interim
> Director of the Recreation Department until further notice.
>
> Please direct any and all questions to this office.

Morris App. 00107.  The notice sent to Harris does not accuse Harris of misconduct, state that she

committed a crime, misappropriated City funds, or was in any way deceptive or dishonest in

connection with her employment.  The court understands that resignations or terminations that are

"effective immediately" pique widespread interest in the workforce as to the reason for such

resignations or terminations; however, as long as no stigmatizing statements are made in connection

with a resignation or termination, speculation and watercooler talk that may abound as to the reason

for the sudden resignation or termination of an employee are quite beside the point as to the

existence of a liberty interest claim.  Moreover, even though "it is generally understood that the loss

of a job can be stigmatizing in itself, the law requires more to find a liberty deprivation."  *Whiting*

*v. The University of  S. Miss.*, 451 F.3d 339, 347 (5th Cir. 2006) (citation omitted).  For these reasons, the notice sent to City employees cannot serve as a basis for Plaintiff's liberty interest claim.

The viability of the liberty interest claim against Morris is doubtful.  Based upon previously cited precedent, the remedy that lies for the denial of the liberty interest alleged is an action against the discharged employee's employer.  The City, not Morris, was Harris's employer.  The court therefore seriously questions whether, as a matter of law, Plaintiff can even state a claim upon which relief can be granted against Morris.[5]

### D.    Plaintiff's Race Discrimination Claims under Section 1981

Plaintiff mischaracterizes her claim as "race discrimination in violation of 42.U.S.C. § 1983." Pl.'s Original Pet. 12.  As previously stated, section 1983 does not confer any rights; it provides a means to vindicate rights conferred elsewhere.  As will be shown by the allegations of the Petition, the right for which Plaintiff seeks a remedy is that found in 42 U.S.C. § 1981, and the enforcement of that remedy must be through section 1983, which Plaintiff appears to have done.

Plaintiff contends that "Defendants have deprived [her] of her right to make, enforce, perform and terminate contracts and to full and equal benefit of regulations and of all laws and

---

[5] Moreover, the court does not understand the necessity of this claim against Morris, as the City is a party to this action.  Harris's allegations regarding this claim reflect what the City Council failed to do with respect to providing her a hearing.  As the City acts through the governing body, Morris should not have been sued regarding this claim.  The court states the same with respect to Defendant Council Members.  The City, not the Council Members, were Harris's employer.  Once again, as the City is already a party, suing the Council Members is unnecessary.  Further, Plaintiff has identified no false and stigmatizing charges that any Defendant Council Member made and published relating to Harris's termination, and she has failed to state a claim against them.

proceedings of the security of [her] employment because of [her] race in violation of 42 U.S.C. §

1981." Pl.'s Original Pet.12, ¶ 9.02. Section 1981 provides as follows:

> (a)     Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same  right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b)     "Make and enforce contracts" defined
>
> For purpose of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c)     Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

Morris counters that Plaintiff's allegations of race discrimination against him are too broad

and conclusory to rebut his entitlement to qualified immunity.  Further, Morris contends that he is

entitled to qualified immunity because it is not clearly established that Plaintiff may bring race

discrimination claims under section 1981 against a public official who was not a party to an alleged

contract with Balch Springs.  Plaintiff replies that Morris is not entitled to qualified immunity

because he violated clearly establish constitutional or statutory rights of which a reasonable person

would have known and because a supervisory official, such as Morris, may be held liable for his

action or inaction if the supervisor demonstrates a deliberate indifference to a person's constitutional or federally protected rights.

"Section 1981 refers to racial discrimination in the making and enforcement of contracts." *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983) (citing *Johnson v. Railway Express Agency*, 421 U.S. 454, 459-60 (1975)). In *Jett v. Dallas Independent School District*, the Supreme Court concluded that "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." 491 U.S. 701, 731 (1989). Stated another way, the Court held that section 1981 does not provide for a cause of action independent of section 1983 against state actors, and that the exclusive remedy for enforcement of rights secured by section 1981 is a cause of action brought pursuant to section 1983. *Id.* at 733. The Civil Rights Act of 1991 amended section 1981 by adding subsection (c); however, this amendment did not overrule or abrogate the Court's holding in *Jett*. *Oden v. Oktibbeha Cnty., Miss.,* 246 F.3d 458, 463 (5th Cir. 2001) ("We are persuaded that the conclusion reached in *Jett* remains the same after Congress enacted the 1991 amendments."). "Section 1983 remains the only provision to expressly create a remedy against persons acting under color of state law." *Id.*

Plaintiff's allegations regarding section 1981 include the following:

## IX.

## Count Four

## Race Discrimination in Violation of 42 U.S.C. § 1983

(Against all Defendants)

9.01    Plaintiff incorporates the foregoing paragraphs by reference as if set forth verbatim herein.

9.02    Defendants have deprived Plaintiff of her right to make, enforce, perform and terminate contracts and to full and equal benefit of regulations and of all laws and proceedings of the security of Plaintiff's employment because of Plaintiff's race in violation of 42 U.S.C. § 1981.

9.03    Defendant discriminated against Plaintiff on the basis of Plaintiff's race (black), and in retaliation for exercising her rights to oppose such behavior by filing with the EEOC, and attempting to complain to the City Council about her illegal termination.

9.04    Defendants are not entitled to federal immunity, because they violated clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

9.05    Such discrimination by Defendants against Plaintiff was intentional. . . .

Pl.'s Original Pet. 12-13, § IX, ¶¶ 9.01-9.05.  In addition to the allegations, Plaintiff alleges that

Morris is  white and Harris is black.

The court agrees with Morris that the allegations against him regarding race discrimination

under section 1981 are conclusory and vague, and are not fact specific to support a claim of race

discrimination.   Based on these wholly conclusory allegations, it is possible that Morris

discriminated against Harris on the basis of her race; however, when the allegations of the pleading

only allow the court to infer the "sheer possibility" of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.  Because of the deficiencies in pleading this claim, Plaintiff cannot overcome Morris's defense of qualified immunity.[6]  The court will allow Plaintiff to replead this claim with specificity required by law.

The court does not agree with Morris's reading of *Oden*.  Morris contends that he is entitled to qualified immunity because it is not clearly established that a person may bring a section 1981 claim relating to an employment dispute against a public official who was not a party to an employment contract.

In *Oden*, the court did not hold that the plaintiff could not pursue his section 1981 claim pursuant to section 1983.  The court specifically stated that a plaintiff may "pursue a § 1983 cause of action against persons acting under color of state law in order to assert [his or her] substantive rights under § 1981.  *Oden*, 246 F.3d at 462.  The court interprets this statement as holding that a local government official may be sued in his or her personal capacity for alleged violations of section 1981, but a plaintiff must bring the action pursuant to section 1983.  Moreover, the court questions the applicability of *Oden* to this case.  In *Oden* the Fifth Circuit stated that the Supreme Court "has not imposed personal liability on *elected* officials for discrimination in the terms and conditions of local government employment contracts."  *Id.* at 464 (emphasis added).  Apparently, the Fifth Circuit makes a distinction between local officials who are *elected* and those who are appointed.  As Morris is not an elected official, the court fails to see how *Oden* supports his position.  This issue will require significant elaboration if it is raised in a subsequent motion to dismiss, but

---

[6] This ruling also equally applies to Defendant Council Members sued in their individual capacities, as the allegations are woefully lacking in specificity regarding their alleged illegal conduct.

at this juncture, the court cannot use *Oden* as a basis to dismiss Plaintiff's section 1981 claim against Morris.

### E.      Plaintiff's First Amendment Claim of Association Discrimination

With respect to this claim, Plaintiff alleges the following:

> 10.02   Defendants have deprived Plaintiff of her Constitutional right to freely associate, and exercise her political rights during private time off duty through her friendship with former Mayor Cedric Davis.  Davis ran for re-election unsuccessfully, and was defeated approximately six days before the termination of Plaintiff on May 20, 2011.   Morris had previously made statements indicating his opposition to the re-election of Davis as Mayor of Balch Springs, and his belief that Davis would seek to have his contract terminated if he was elected.

Pl.'s Original Pet. ¶ 10.02.  Harris further contends that "Defendant[s] discriminated against Plaintiff on the basis of Plaintiff's political association with Davis.  Governmental employees who are not in policy-making positions of confidence are shielded from adverse employment decisions based on their political affiliations."  *Id.* ¶ 10.03.  According to Harris, she falls into this category of public employees and is entitled to constitutional protection because "she was required to present any substantial policies to the City Manager or City Council for approval."  *Id.*

Morris contends that he is entitled to qualified immunity with respect to Plaintiff's claim of association discrimination under the First Amendment because the allegations of the Petition are inadequate to state a claim against him, and because the law is not clearly established that his conduct with respect to Harris violated any constitutional right of association under the First Amendment.

The First Amendment "forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party

affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990) (citing *Elrod v. Burns*, 427 U.S. 347 (1976); and *Branti v. Finkel*, 445 U.S. 507 (1980)). Political patronage practices that involve promotions, transfers, recalls, and hiring decisions of low-level public employees run afoul of the United States Constitution if such patronage practices are "based on party affiliation and support." *Id.* at 65. "Although the Supreme Court's decisions involve party affiliation, [the Fifth] Circuit has recognized that the *Elrod-Branti* doctrine applies when an employment decision is based upon support of and loyalty to a particular candidate as distinguished from a political party." *Jordan v. Ector Cnty.*, 516 F.3d 290, 295-96 (5th Cir. 2008) (internal quotation marks, footnote, and citations omitted). In political patronage cases, the Fifth Circuit "more readily find[s] that the government's interests outweigh the employee's interests where the employee is a policymaker or is confidential." *Wiggins v. Lowndes Cnty.*, 363 F.3d 387, 390 (5th Cir. 2004) (citation omitted). For purposes of First Amendment cases involving political patronage, a "policymaker is an employee whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." *Id.* (citation omitted). Further, in determining whether an employee is a policymaker, "consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Elrod*, 427 U.S. at 368. A confidential employee is one who "stands in a confidential relationship to the policymaking process, e.g., as an advisor to a policymaker, or if he or she has access to confidential documents or other materials that embody policymaking deliberations and determinations, e.g., as a private secretary to a policymaker." *Id.* at 391 (citation omitted).

Harris states that she was not in a policymaking position of confidence.  Pl.'s Original Pet. ¶ 10.03.   The focus should be whether the employee is a "policymaker" or a "confidential" employee.  *Wiggins*, 363 F.3d at 390.  Harris recognizes this because in her response she states, "it is far from clear that the Recreational Director of a department with four employees reporting to her stood in a position of confidence with exposure to substantial secrets, or that the policy making reach of such a position would be such as to require political patronage."  Pl.'s Resp. to Def. Morris's Mot. to Dismiss and Br. 21.

First, the court believes that the allegations of Plaintiff's Petition are simply too bare-bones to state a claim against Morris.  The essence of Plaintiff's allegations is that she was a friend of former Mayor Cedric Davis, who lost his race for reelection in May 2011, and that Morris opposed Davis's reelection because Davis would seek to have Morris's contract (employment) terminated if he were reelected.  Nothing in the allegations indicates that Morris took action against Harris because of her association or friendship with Davis; and no mention is even made that Morris knew of Harris and Davis's friendship, or that he knew Harris was a political supporter of Davis. Moreover, that one would be opposed to a candidate who might terminate his employment is nothing novel in politics.   While it may be possible that Morris acted against Harris because of her association with Davis, a "sheer possibility" that a defendant acted unlawfully fails the "plausibility test" set forth in *Twombly* and *Iqbal*.  The court, based on the allegations in the Petition, cannot draw the reasonable inference that Morris is liable for the conduct Harris alleges.  Any inference drawn by the court would be based on speculation or conjecture, which is impermissible.  Given that the allegations of the Petition lack the requisite specificity required by *Twombly* and *Iqbal*, the court determines that Plaintiff has failed to state a claim upon which relief can be granted against Morris.

This ruling applies with equal force to Defendant Council Members, as the allegation against them are totally lacking in specificity to state a claim against them.  The court will allow Plaintiff an opportunity to replead this claim.

Second, the court questions whether Plaintiff falls into the category of a policymaker or confidential employee for First Amendment purposes, as the pleadings are not sufficiently developed in this case for the court to determine whether Harris was a policymaker or a confidential employee. The court raises this point because it will have to be addressed if Plaintiff repleads and successfully states an association claim, and Defendants raise the policymaker or confidential employee argument in a subsequent motion to dismiss.

In *Gentry v. Lowndes County*, the Fifth Circuit found that a nonelected road manager was a policymaker because he was a department head and supervised road and bridge work in the county; assisted in preparing a budget for his department; hired assistants and employees; bought and leased equipment needed for the operation of the department; and executed the policies of the county board of supervisors, the governing body of the county.  337 F.3d 481, 487 (5th Cir. 2003). In *Gentry,* the court held that the road manager and county administrator were policymakers because they "occup[ied] critical managerial roles in county government, and because their duties strongly influenced the public's view of the elected board of supervisors" and, therefore, "the board [had to] be assured of the trust and loyalty of the road manager and administrator and [had to] be able to assume the confidentiality, when necessary, of their mutual dealings." *Id.* Further, critical to the court's decision was that the employees' positions "enable[d] them to advance the board's policies, if they act[ed] faithfully, or to undermine those policies by overt or covert opposition." *Id.* at 488. In *Gentry*, both of the high-level employees' employment could be terminated only by the board of

supervisors.  In *Kinsey v. Salado Independent School District*, the Fifth Circuit held that the discharge of a school superintendent did not violate the First Amendment.  950 F.2d 988 (5th Cir. 1992) (en banc).   Crucial to the court's decision was that the superintendent's primary responsibilities were to advise the board, "make recommendations to guide its decisions" and, as chief administrator, "implement its policies and decisions." *Id.* at 995-96.  Because of Kinsey's position, the court concluded that he had the power to "make or break" the board's policies. *Id.* at 996.  The court also concluded that Kinsey had a confidential relationship with the board. *Id.*

As previously stated, the court is not convinced, at this stage, that Harris falls into the category of a policymaker or confidential employee.  Her position with the City does not appear to be analogous to that of the road manager in *Gentry* or superintendent in *Kinsey*.  Thus, if the issue is raised subsequently, the parties are on due notice of the court's thinking and of what needs to be fleshed out regarding this issue in an amended pleading and a subsequent motion to dismiss.

### F.    Plaintiff's Claim for Declaratory and Injunctive Relief

Harris seeks injunctive and declaratory relief.  She requests the court to declare that any action taken by the Balch Springs City in executive session be declared illegal and void.  She also requests that the action taken by the city manager in terminating her be declared illegal.  Further, she requests that the court issue an injunction and order Defendants to allow her to return to work at Balch Springs.

The court will grant Defendants' motion with respect to whether Morris had the authority to terminate Harris because the court has ruled that he had such authority.  Therefore, Plaintiff is not entitled to a declaration from this court that the city manager acted unlawfully when he terminated Harris's employment with the City.  In all other respects, Defendants' motion will be denied with

respect to declaratory and injunctive relief.  Dismissal of requests for injunctive and declaratory relief at this stage of the litigation on the remaining matters is premature.  A court usually rules on such relief toward or at the conclusion of the litigation, unless it is dismissing a claim.  Moreover, a ruling on the substantive claims or a trial could make the relief sought moot.  In other words, except as herein stated, to rule on these claims for relief before the underlying claims are addressed "puts the cart before the horse."  Accordingly, the court does not believe judicial economy is served by issuing a decision on relief that may be mooted by a pretrial dispositive ruling or trial.

## IV.   Defendant Council Members' Motion to Dismiss

Defendant Council Members have essentially asserted the same arguments made by Morris, and, therefore, there is significant overlap between the arguments.  In addressing Plaintiff's claims against Morris, the court specifically determined that each argument or basis for dismissal of a claim against Morris equally applied to Defendant Council Members.  For this reason, no purpose is served by the court reiterating conclusions that it has already made in conjunction with Morris's Motion to Dismiss.

## V.   Amendment of Pleadings

Plaintiff's pleadings are based on standards applicable to those in state court.  "The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The court determines that justice is served by allowing Plaintiff to replead some of her claims.

In determining whether to allow an amendment of pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182

(1962); *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 566 (5th Cir. 2003).  Plaintiff will be permitted to amend her pleadings with respect to all counts, except Count Two and Count Three to the extent that she attempts to assert a property interest in her job, and her request to the court to declare that her discharge by Morris was illegal.  The court has concluded as a matter of law that Plaintiff had no constitutionally protected property interest in her job and that Morris had the authority to discharge her.  Accordingly, attempting to replead these claims would be futile.  In repleading any claim, Plaintiff must plead sufficiently in accordance with standards set forth herein in section II of this opinion.

## VI.    Miscellany

The court has pored over approximately 500 pages of briefing and pleading, much of which was not "easy" reading.  This does not include case law.  This has placed a tremendous strain on scarce judicial resources.  To minimize a recurrence, with respect to any subsequent dispositive motions, a single motion must be filed with respect to all Defendants.  If filing a motion that includes all Defendants creates a problem regarding page limitations, the matter can be address by filing a motion for leave to exceed page limitations.

## VII.    Conclusion

For the reasons herein stated, the court **grants in part** and **denies in part** Defendants Verlyn Z. Smith, Julie B. Greer, Charlene Rushing, and Karen E. Gray's Motion to Dismiss; and **grants in part** and **denies in part** Defendant William Edward Morris's Motion to Dismiss.  In particular, the court, for the reasons herein stated, **dismisses with prejudice** Plaintiff's procedural and substantive due process claim against Morris and Defendant Council Members under the Fourteenth Amendment regarding her alleged constitutionally protected property interest; **dismisses with**

**prejudice** Plaintiff's request for declaratory relief that Morris's action in discharging her was illegal;

**dismisses without prejudice** Plaintiff's First Amendment claim of association discrimination,

Plaintiff's section 1981 race discrimination claim brought pursuant to section 1983, and Plaintiff's

liberty interest claim pursuant to the Fourteenth Amendment.  Those claims that the court dismisses

without prejudice **must be repleaded** in accordance with the applicable standards by **October 19,**

**2012**.

      **It is so ordered** this 30th day of September, 2012.

                                       Sam A. Lindsay
                                     United States District Judge