IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHARLA HARRIS**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-2307-L** |
| | § | |
| **CITY OF BALCH SPRINGS, WILLIAM** | § | |
| **EDWARD MORRIS, VERLYN Z.** | § | |
| **SMITH, JULIE B. GREER, CHARLENE** | § | |
| **RUSHING, and KAREN E. GRAY**, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendants' Motion for Partial Dismissal of Plaintiff's First Amended Complaint, filed November 5, 2012.  After careful consideration of the motion, response, reply, supplements, hearing and applicable law, the court **grants in part** and **denies in part** Defendants' Motion for Partial Dismissal of Plaintiff's First Amended Complaint.

## I.    Background

Charla Harris ("Plaintiff" or "Harris") filed this action originally in the 191st Judicial District Court, Dallas County, Texas, on August 11, 2011, against the City of Balch Springs ("Balch Springs" or the "City"); City Manager William Edward Morris ("Morris"); and Balch Springs City Council Members Verlyn Smith, Julie B. Greer, Charlene Rushing, and Karen E. Gray (collectively, the "Council Members"), all of whom are collectively referred to as "Defendants."  As a result of motions to dismiss filed by Defendant Smith, Greer, Rushing, Gray, and Morris, the court on September 30, 2012, dismissed some of Plaintiff's claims and

directed her to replead claims that did not meet the federal pleading standard.  Harris filed Plaintiff's First Amended Complaint (the "Complaint") on October 19, 2012.

In her first claim, Harris brings suit for the alleged breach of an Equal Employment Opportunity Commission ("EEOC") Settlement Agreement ("Agreement").  Harris contends that Balch Springs breached the Agreement by: (1) allowing Morris to retaliate against her after she had filed an EEOC charge; (2) allowing Morris to fire her without authorization from the City Council; (3) failing to create a clear and effective line of communication between the City Manager's Office and the Balch Springs Recreation Center; (4) failing to restore full management authority of the Balch Springs Recreation Center to her; (5) failing to participate in good faith in the implementation of a job growth plan between her and Sam Allen; (6) failing to publish a written policy dealing with the handling of cash transactions for all City departments; and (7) firing her and removing her from management of the Recreation Center.  Finally, with respect to this claim, Harris contends that the City, by refusing to allow an appeal of Morris's actions, ratified his conduct.

In her second claim, Harris contends that all Defendants deprived her of a liberty interest protected by the Fourteenth Amendment to the United States Constitution because she was not provided a name-clearing hearing regarding allegedly stigmatizing statements that were made in conjunction or connection with her termination from the City.  At times, Plaintiff appears to suggest that she was procedurally and substantively deprived of a property interest protected by the Fourteenth Amendment.  The court, however, explicitly held previously in its Memorandum Opinion and Order of September 30, 2012, that Plaintiff was not deprived of any procedural or substantive due process rights regarding an alleged property interest.   Accordingly, notwithstanding the allegations of the Complaint, the court will not address any purported claims

of a procedural or substantive due process violation regarding any alleged property interest, as these claims have been definitively decided.  Likewise, to the extent that the Complaint asserts, or attempts to assert, that Morris did not have the authority to terminate Harris, such issue has been previously resolved by the court and will not be revisted.

Plaintiff's third claim is a statutory claim of discrimination.  Harris contends that the City, Morris, and Rushing deprived her of her rights and discriminated against her on account of her race (black) in violation of 42 U.S.C. §§ 1981 and 1983.  In this claim, Harris contends that these "Defendants have deprived Plaintiff of her right to make, enforce, perform and terminate contracts and to full and equal benefits of regulations and of all laws and proceedings of the security of Plaintiff's employment because of Plaintiff's race in violation of 42 U.S.C. § 1981." Pl.'s First Am. Compl. 18, ¶ 7.02.

Harris's fourth claim is an association discrimination claim against Morris and the City brought under the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.  In this claim, Harris contends that the City and Morris deprived her of her right to associate freely and exercise her political rights during her private time while not on duty for the City.  From what the court can ascertain, this claim appears to find its origin in Harris's belief that Morris and the City were opposed to her working on former Mayor Cedric Davis's re-election campaign.  According to Plaintiff, Morris was opposed to the re-election of Davis because he believed Davis would seek to have him removed as City Manager.

Plaintiff's fifth and sixth claims are for race discrimination and retaliation.  Her fifth claim is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended.  Harris contends that her discharge from the City was based on her race and that the City retaliated against her for having filed an earlier EEOC charge of discrimination.  Harris's sixth and final

claim is brought under state law, the Texas Commission on Human Rights Act ("TCHRA"), and closely parallels her Title VII claim.  Plaintiff's fifth and sixth claims are brought only against the City.

In their motion for partial dismissal, Defendants contend that Plaintiff's stigma-plus claim should be dismissed with prejudice as to all of them because Harris has failed to plead a sufficient factual basis for her conclusory claim that stigmatizing statements were published in connection with her termination.  The Individual Defendants contend that they are entitled to dismissal of Plaintiff's stigma-plus claim because (1) none of them was Plaintiff's employer and (2) she has failed to allege facts sufficient to rebut their entitlement to qualified immunity.

With respect to Plaintiff's section 1981 claim, Defendants Morris and Rushing contend that it should be dismissed against them because they are entitled to qualified immunity. Likewise, Morris contends that Plaintiff's First Amendment association discrimination claim brought pursuant to section 1983 should be dismissed against him because he is entitled to qualified immunity.  The City contends that Plaintiff's section 1983 association discrimination claim against it should be dismissed because she has not alleged that any alleged actions taken against her based on her alleged political associations were the result of a policy, custom, or practice of the City.

Finally, the City contends that Plaintiff's request for punitive or exemplary damages against it should be dismissed because punitive damages, as a matter of law, are not recoverable against a governmental entity.  The City also contends that Plaintiff's "official capacity" claims should be dismissed because they are redundant or duplicative of her claims against the City.

Harris counters that she has properly pleaded her claims in the Complaint and that the motion for partial dismissal should be denied so that discovery in this case can finally proceed.

Plaintiff contends that her amended pleading offers details of racist behavior and conscious indifference to her efforts to clear her name, that she has set forth facts to show that the Individual Defendants violated clearly established constitutional and statutory rights, and that the Individual Defendants are therefore not entitled to the defense of qualified immunity. Further, Plaintiff contends that she has offered sufficient factual details to support her claim of First Amendment association discrimination. Plaintiff requests the court to deny the motion for partial dismissal, require the Defendants to answer the Complaint, and allow the parties to proceed with discovery.

## II.    Standards

### A.    Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find

inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### B.      Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Individual Defendants have pleaded this defense.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, a court must determine first whether the facts alleged or shown are

sufficient to make out a violation of a constitutional or federal statutory right.  If the record sets

forth or establishes no violation, no further inquiry is necessary.  On the other hand, if the

plaintiff sufficiently pleads or establishes that a violation could be made out, the court must

determine whether the right at issue was clearly established at the time of the government

official's alleged misconduct.  *Id.*  The Court relaxed this mandatory sequence in *Pearson v.*

*Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often

appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to

exercise their sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

at 236.  The second prong of the test "is better understood as two separate inquiries: whether the

allegedly violated constitutional right[] [was] clearly established at the time of the incident; and

if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of

then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal

quotation marks and citations omitted); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir.

1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch.*

*Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such

defense.  In the context of qualified immunity, however, this burden varies from the norm.  In

this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a
> governmental official whose position involves the exercise of discretion, the
> plaintiff then has the burden to rebut this defense by establishing that the official's
> allegedly wrongful conduct violated clearly established law.  We do not require
> that an official demonstrate that he did not violate clearly established federal
> rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified

immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d at 882; *Stefanoff v. Hays Cnty.*, 154 F.3d at 525.

In cases involving claims of qualified immunity, it is often appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *Id.* A plaintiff generally must be given the opportunity to reply with greater specificity in such cases before the court rules on a defendant's dispositive motion. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1996).

A reply, however, is only required when the claims in the complaint are not supported "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434. If "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss. *Shipp v. McMahon,* 234 F.3d 907, 912 (5th Cir. 2000).

III.    **Discussion**

    A.    **Plaintiff's Liberty Interest Claim**

Plaintiff asserts a "violation of due process under 42 U.S.C. § 1983."[1]  This claim is set

forth as follows in Plaintiff's Complaint:

> 6.01    Plaintiff incorporates the foregoing provisions as if set forth herein verbatim.

> 6.02    A public employee has a liberty interest protected by the Fourteenth Amendment to the United States Constitution if she can demonstrate, in conjunction with her discharge from public employment, her employer made a statement or charge that "might seriously damage her standing and associations in her community" or that "imposed on [her] a stigma or other disability that foreclose[s] her freedom to take advantage of other employment opportunities." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972).  The procedural remedy, namely, the process due such an employee, is the right to a "name-clearing" hearing. *Id*. at n.12; *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989) (citation omitted), *aff'd in relevant part*, 901 F.2d 61 (5th Cir. 1990) (en banc).  If the government employer discharges an employee under the circumstances herein set forth and no opportunity is provided to clear the employee's name, the employee may recover monetary damages pursuant to section 1983 for the deprivation of her liberty interest under the Fourteenth Amendment. *Id.*

> 6.03    Defendants have violated that right by terminating Plaintiff without affording her due process.  Plaintiff was terminated from her job on or about May 20, 2011.  Morris made the initial decision to fire Plaintiff without giving her a right to contest allegations made by Sam Allen. Morris was the final decision-maker for purposes of the termination according to this Court's Order dated September 30, 2012.  Morris, of course, had ulterior motives in any decision, including a desire to retaliate for Plaintiff's earlier EEOC charge and because of her political affiliation with former Mayor Cedric Davis.   Notice of her termination was publicized in that it was sent to all city employees by memo dated May 20, 2011, and it was accompanied by additional oral statements by Sam Allen to her department and former Mayor Cedric Davis.   Further, the

---

[1] Once again, as a point of clarification, section 1983 secures or guarantees no rights.  It "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In this instance, Harris is asserting a claim for deprivation of liberty without due process of law pursuant to the Fourteenth Amendment to the United States Constitution that is *brought through section 1983.*

discharge comes less than a year after Morris made public and executive session
stigmatizing accusations against Harris of incompetence and misappropriation of
money. Such accusations were false.

6.04    Plaintiff was not provided adequate notice and an opportunity to be
heard by a neutral decision maker prior to the discharge, and the Council
members have not promulgated a policy which would afford her this right. Morris
has testified to the TWC that the internal grievance process was not available to
terminated employees.   The City Council was made aware of Plaintiff's
objections to the actions taken by the City Manager, and Plaintiff requested
during at least two City Council meetings to have an opportunity to clear her
name. The individual City Council members named in this suit voted to table
indefinitely the motion by an African American councilwoman to allow such a
hearing, thereby effectively denying the request for over a year.

6.05    Plaintiff has been effectively barred from future City employment
because of the stigma of having been fired "for cause" without an opportunity to
clear her name.  Employee Handbook at ¶ 7.3.  Further, on information and belief,
she lost another employment opportunity with the City of Rowlett as a result of
the false allegations and publicity arising from her termination.

6.06    Defendants are not entitled to federal immunity, because they
violated clearly established statutory or constitutional rights of which a reasonable
person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Rush
v. Perryman*, 579 F.3d 908 (8th Cir. 2007) (Board members not entitled to
qualified immunity because right to public name-clearing hearing was well
established in termination of president for dishonesty, insubordination, failure to
comply with state law, and willful disregard of Board policy).  Each of the
Council member defendants voted to table indefinitely a motion to allow a
hearing to investigate the allegations against Plaintiff, and failed to promulgate a
grievance procedure which would have afforded Plaintiff a name-clearing
hearing.

6.07    Plaintiff has been required to obtain the assistance of counsel to
represent her in this matter, for which she is entitled to recover under federal law.
42 U.S.C. §1988(b).

Pl.'s First Am. Compl. ¶¶ 6.01-6.07.

A public employee has a liberty interest protected by the Fourteenth Amendment if she

can demonstrate that her employer, in connection with her discharge from public employment,

made a statement or charge that "might seriously damage [her] standing and associations in [her]

community" or that "imposed on [her] a stigma or other disability that foreclose[s] [her] freedom to take advantage of other employment opportunities." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972).  The procedural remedy, namely, the process due such an employee, is the right to a "name-clearing" hearing.  *Id.* at n.12; *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989) (citation omitted), *aff'd in relevant part,* 901 F.2d 61 (5th Cir. 1990) (en banc).  The discharged employee is entitled to a name-clearing hearing only; she is not entitled to "actual review of the decision to discharge [her]." *Id.*  Of course, if the government employer discharges an employee under the circumstances herein set forth and no opportunity is provided to clear the employee's name, the employee may recover monetary damages pursuant to section 1983 for the deprivation of her liberty interest under the Fourteenth Amendment. *Id.*

The Fifth Circuit uses a seven-part "stigma-plus-infringement" test to decide whether section 1983 provides a remedy to a government employee for the denial of a name-clearing hearing.  *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (citation omitted).  Under this test, the discharged employee must demonstrate or allege facts from which the court can reasonably infer that:

> (1) [she] was discharged; (2) stigmatizing charges were made against [her] in connection with the discharge; (3) the charges were false; (4) [she] was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) [she] requested a hearing to clear [her] name; and (7) the employer denied the request.

*Id.* (footnote omitted).

### 1.      Morris and the City Council Members

As *Rosenstein* and other precedent make clear, a claim lies against the government employer, not an employee or official of the government.  It is beyond dispute that Harris's employer was the City, not Morris as the City Manager, or Defendants Smith, Greer, Rushing,

and Gray as Council Members.  Moreover, Plaintiff does not even allege that any of these individuals was her employer.[2]  As these Defendants were not Harris's employer, they, as a matter of law, cannot be liable to Plaintiff.  Further, the court has pored over the Complaint, and it contains no allegations that the four Council Members published, or caused to be published, stigmatizing charges against Plaintiff.  Therefore, the Complaint fails to state a liberty interest claim against Defendant Council Members.

Plaintiff cites *Rush v. Perryman*, 579 F.3d 908 (8th Cir. 2009), to support her argument that officials in their individual capacities may be held liable for deprivation of a liberty interest. First, the *Rush* case is from another circuit and is therefore not binding on this court.  Second, the holding in *Rush* is contrary to Fifth Circuit precedent that the claim or cause of action lies against the employer, not the employee or official of the governmental entity in his or her individual capacity.  Finally, the decision in *Rush* does not indicate whether this point was even raised by the members of the board of trustees with respect to their individual capacities; and therefore, unless it is beyond cavil that the point was raised, Harris cannot rely on *Rush* in support of her

---

[2] In its Memorandum and Opinion and Order of September 30, 2012, the court put Harris on notice of its doubts regarding the viability of this claim:

> Moreover, the court does not understand the necessity of this claim against Morris, as the City is a party to this action.  Harris's allegations regarding this claim reflect what the City Council failed to do with respect to providing her a hearing.  As the City acts through the governing body, Morris should not have been sued regarding this claim.  The court states the same with respect to Defendant Council Members.  The City, not the Council Members, were Harris's employer.  Once again, as the City is already a party, suing the Council Members is unnecessary.  Further, Plaintiff has identified no false and stigmatizing charges that any Defendant Council Member made and published relating to Harris's termination, and she has failed to state a claim against them.

*Id.* at 23 n.5.

argument the government officials in their individual capacities may be held liable for the denial of a name-clearing hearing to a discharged employee.  For all of these reasons, *Rush* does not support liability against the Council Members and Morris in their individual capacities.

### 2.     The City

The liberty interest claim against the City is a closer call; however, the court determines that the Complaint states sufficient allegations to survive a Rule 12(b)(6) motion on this claim. Although *all* allegations in the Complaint relating to Plaintiff's liberty interest claims cannot be read to constitute, or can be reasonably inferred as constituting, charges or statements that seriously damage Harris's standing and associations in the community or impose a stigma or other disability on Harris that forecloses her freedom to take advantage of other employment opportunities, the court determines that Plaintiff has alleged sufficient facts from which one can reasonably infer that the overall allegations of her liberty interest claim are sufficient to meet the seven-part test enunciated by the Fifth Circuit.[3]  Whether these allegations will survive a summary judgment motion is quite beside the point, as the court, at this stage, only tests the sufficiency of the allegations in the Complaint, and determines that in light of existing precedent, the allegations in Plaintiff's Complaint regarding her liberty interest claim are such that they allow the court to infer more than the mere possibility of wrongdoing on the City's part.  The court sees no utility, at this time, in ruling on which statements as a matter of law are not stigmatizing because all of the to-and-fro can be sorted out at the summary judgment stage.  At

---

[3] The court ruled in its Memorandum Opinion and Order of September 30, 2012, that the notice sent by Morris on May 20, 2011, informing them that Harris was no longer employed by the City did not contain any stigmatizing statements.  *Id.* at 22.  Accordingly, the notice may not serve as a basis for a liability interest claim.

**Memorandum Opinion and Order – Page 15**

this juncture, the question is the sufficiency of the allegations in the pleadings; Plaintiff does not have to prove that she will ultimately prevail on this claim.

### B. Plaintiff's Race Discrimination Claims in Violation of 42 U.S.C. §§ 1981 and 1983

Although Plaintiff characterizes these claims as being brought under section 1981 and 1983, the court, because of the manner in which the claim is pleaded in the Complaint, treats this as a claim for rights secured by section 1981 that is brought pursuant to the remedial provisions of section 1983. Harris makes this claim against the City, Morris and Rushing. She alleges as follows:

> 7.01 Plaintiff incorporates the foregoing paragraphs by reference as if set forth verbatim herein.
>
> 7.02 Defendants have deprived Plaintiff of her right to make, enforce, perform and terminate contracts and to full and equal benefit of regulations and of all laws and proceedings of the security of Plaintiff's employment because of Plaintiff's race in violation of 42 U.S.C. § 1981.
>
> 7.03 Defendant[s] discriminated against Plaintiff on the basis of Plaintiff's race (black), and in retaliation for exercising her rights to oppose such behavior by filing with the EEOC, and attempting to complain to the City Council about her illegal termination.
>
> 7.04 Defendants are not entitled to federal immunity, because they violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
>
> 7.05 Such discrimination by Defendants against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. Further, this discrimination was done by Defendants with malice or with reckless indifference to Plaintiff's federally-protected rights. Plaintiff is therefore entitled to recover punitive damages in an amount in excess of the minimum jurisdictional limits of this Court.

Pl.'s First Am. Compl. ¶¶ 7.01-7.05. Section 1981 provides as follows:

(a)    Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b)    "Make and enforce contracts" defined

For purpose of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c)    Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

Morris counters that Plaintiff's allegations of race discrimination against him are too broad and conclusory to rebut his entitlement to qualified immunity.  Further, Morris contends that he is entitled to qualified immunity because it is not clearly established that Plaintiff may bring race discrimination claims under section 1981 against a public official who was not a party to an alleged contract with Balch Springs.  Plaintiff replies that Morris is not entitled to qualified immunity because he violated clearly establish constitutional or statutory rights of which a reasonable person would have known and because a supervisory official, such as Morris, may be held liable for his action or inaction if the supervisor demonstrates a deliberate indifference to a person's constitutionally or federally protected rights.

"Section 1981 refers to racial discrimination in the making and enforcement of contracts."  *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983) (citing *Johnson v. Railway*

*Express Agency*, 421 U.S. 454, 459-60 (1975)).  In *Jett v. Dallas Independent School District*, the Supreme Court concluded that "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981."  491 U.S. 701, 731 (1989).  Stated another way, the Court held that section 1981 does not provide for a cause of action independent of section 1983 against state actors, and that the exclusive remedy for enforcement of rights secured by section 1981 is a cause of action brought pursuant to section 1983.  *Id.* at 733.  The Civil Rights Act of 1991 amended section 1981 by adding subsection (c); however, this amendment did not overrule or abrogate the Court's holding in *Jett.  Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 463 (5th Cir. 2001) ("We are persuaded that the conclusion reached in *Jett* remains the same after Congress enacted the 1991 amendments.").  "Section 1983 remains the only provision to expressly create a remedy against persons acting under color of state law." *Id.*

The court disagrees that the allegations against Morris regarding race discrimination under section 1981 are conclusory, vague, and not fact specific to support a claim of race discrimination.  Based on the allegations set forth above and the allegations in the Complaint as a whole regarding race discrimination, the court concludes that Harris has pleaded sufficient facts for it to reasonably infer that Morris discriminated against Harris on the basis of her race.

The court also disagrees with Morris's reading of *Oden*.  Morris contends that he is entitled to qualified immunity because it is not clearly established that a person may bring a section 1981 claim relating to an employment dispute against a public official who was not a party to an employment contract.  In *Oden*, the court did not hold that the plaintiff could not pursue his section 1981 claim pursuant to section 1983.  The court specifically stated that a plaintiff may "pursue a § 1983 cause of action against persons acting under color of state law in

order to assert [his or her] substantive rights under § 1981." *Oden*, 246 F.3d at 462.  The court interprets this statement as holding that a local government official may be sued in his or her personal capacity for alleged violations of section 1981, but a plaintiff must bring the action pursuant to section 1983.  Moreover, the court questions the applicability of *Oden* to this case.  In *Oden,* the Fifth Circuit stated that the Supreme Court "has not imposed personal liability on *elected* officials for discrimination in the terms and conditions of local government employment contracts."  *Id.* at 464 (emphasis added).  Apparently, the Fifth Circuit makes a distinction between local officials who are *elected* and those who are appointed.  As Morris is an appointed official rather than one elected, the court fails to see how *Oden* supports his position.

The court further disagrees with Morris's argument that the law is unsettled regarding liability of a supervisor under section 1981.  As pointed out in *Knox v. City of Monroe*, "In both earlier and more recent cases, the Fifth Circuit has recognized a cause of action [under section 1981] against an unelected government employee in his individual capacity."  551 F. Supp. 2d 504, 509 (W.D. La. 2008).  *Knox* proceeds to examine three cases regarding this issue: *Faraca v. Clements*, 506 F.2d 956 (5th Cir. 1975); *Bellows v. Amoco Oil Co.*, 118 F.3d 268 (5th Cir. 1997); and *Foley v. University of Houston System*, 335 F.3d 333 (5th Cir. 2003).  *Id.* at 509-10.  In reviewing these cases and their holdings, the court concluded that the employee had a cause of action under section 1981 against her supervisor in his individual capacity.  *Knox,* 551 F. Supp. 2d at 510.  The court believes that the reasoning in *Knox* is sound and that it reinforces what the Firth Circuit has previously held regarding a claim brought against an unelected official under section 1981 in his individual capacity.  Accordingly, the court concludes that whether an employee could bring a race discrimination claim against his supervisor in the supervisor's individual capacity pursuant to section 1981 was clearly established at the time Plaintiff was

terminated in May 2011.   Since the right was clearly established at the time of Harris's termination, and the pleadings, accepting them as true, show that Morris's conduct was objectively unreasonable, he is not entitled to qualified immunity on this claim.

The court, however, can find no basis for the section 1981 claim against Rushing.  She did not hire, supervise or take any adverse action against Harris in her individual capacity. Rushing had no authority of any kind over Harris.   Moreover, there are no allegations that Rushing took any action in her individual capacity against Harris.  Whatever action Rushing took against Harris was taken collectively and in conjunction with other Council Member Defendants acting on behalf of the City.   Such action would necessarily have been taken in her official capacity.   Plaintiff, therefore fails to state a claim upon which relief can be granted against Rushing, and the court will dismiss this claim against her.

### C.    Association Discrimination in Violation of 42 U.S.C. § 1983

Harris, through section 1983, contends that Morris and the City violated her First Amendment right to associate freely and exercise her political rights.  She contends as follows:

> 8.01    Plaintiff incorporates the foregoing paragraphs by reference as if set forth verbatim herein.

> 8.02    Defendants have deprived Plaintiff of her Constitutional right to freely associate, and exercise her political rights during her private time off duty through her friendship with former Mayor Cedric Davis. Davis ran for re-election unsuccessfully, and was defeated approximately one week before the termination of Plaintiff on May 20, 2011. Morris had previously made statements indicating his opposition to the re-election of Davis as Mayor of Balch Springs, and his belief that Davis would seek to have his contract terminated if he was elected. This belief was apparently bolstered by statements made to Morris on or about August 12, 2010 by Lisa Rothwell alleging Davis was conspiring to replace Morris. (PX-77) Morris knew Harris had worked on Davis' campaign, and even went so far as to falsely allege to Councilwoman Gray that Davis and Harris were sleeping together. Morris was the final policymaking authority regarding terminations, because the City Council failed to provide any meaningful grievance or review of his actions for terminated employees despite knowledge of

complaints about Morris, effectively ratifying his decisions and policy-making authority.

8.03    Defendant discriminated against Plaintiff on the basis of Plaintiff's political association with Davis. Governmental employees who are not in policy-making positions of confidence are shielded from adverse employment decisions based on their political affiliations. *Figueroa-Serrano v. Ramos-Alverio*, 221 F.3d 1, 7 (1st Cir. 2000); *see also Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64, 75, 79, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990) (political discrimination claims may extend to hiring, promotions, transfers, and recalls after layoffs); *Branti v. Finkel*, 445 U.S. 507, 517-19, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 356, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) (stating that freedoms of "political belief and association constitute the core of those activities protected by the First Amendment"); *Borges Colon v. Roman-Abreu*, 438 F.3d 1, 14-15 (1st Cir. 2006). Plaintiff qualifies for such protection, because Defendants have asserted she was required to present any substantial policies to Sam Allen, the City Manager, or the City Council for approval, including such details as work hours, overtime, Rec Center programs, and money handling policies.

8.04    Defendant Morris is not entitled to federal immunity, because he violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

8.05    Such discrimination by Defendants against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses. Further, this discrimination was done by Defendants with malice or with reckless indifference to Plaintiff's federally-protected rights. Plaintiff is therefore entitled to recover punitive damages in an amount in excess of the minimum jurisdictional limits of this Court.

Pl.'s First Am. Compl. ¶¶ 8.01-8.05.

Morris contends that he is entitled to qualified immunity with respect to Plaintiff's claim

of association discrimination under the First Amendment because the allegations of the

Complaint are inadequate to state a claim against him, and because the law is not clearly

established that his conduct with respect to Harris violated any constitutional right of association

under the First Amendment.   Specifically, Harris contends that Morris took adverse action

against her because of her association with former Mayor Cedric Davis.

To counter Morris's argument that she has not pleaded sufficient facts to overcome his defense of qualified immunity, Harris cites to the following ten sets of allegations in her Complaint:

- Morris confidant Sam Allen told former Mayor Cedric Davis that: "you really need to help your girl out.  You need to make her shine, because you know, your boy Ed is out to get her."  Amended Complaint at ¶ 4.02;

- Morris had accused Harris of sleeping with former Mayor Davis.  Amended Complaint at ¶ 8.02;

- Morris conducted a meeting with Lisa Rothwell on August 12, 2010.  Rothwell accused Harris of being in frequent contact with former Mayor Cedric Davis to develop a plan to get Morris fired.  Amended Complaint at ¶ 4.09;

- City Manager Ed Morris then proceeded to conspire with Sam Allen to interfere with the operation of the Recreation Center, and set up Plaintiff for termination in violation of EEOC agreement.  Sam Allen and Plaintiff met on or about September 18, 2010 to outline "growth points" related to operation of the Recreation Department.  Three months later in December 2010, he then proceeded to rate Plaintiff as "needs improvement" in 21 of 24 categories.  His plan ultimately came to fruition when Ed Morris purported to terminate Plaintiff on or about May 20, 2011.  Amended Complaint at ¶ 4.10;

- Morris disliked Davis, and knew that Harris had volunteered to work on Davis' campaign for Mayor.  Amended Complaint at ¶ 4.11;

- Sam Allen told Davis that Morris believed Davis had assisted Plaintiff in the preparation of the EEOC charge, and accused Davis of being a "troublemaker."  Amended Complaint at ¶ 4.11;

- Harris was fired approximately one week following Davis' loss of the race for Mayor on May 14, 2011.  Amended Complaint at ¶ 4.11;

- Plaintiff explains how all of the specific allegations against her were unsupportable in ¶¶ 4.12-17;

- Morris testified to the TWC [Texas Workforce Commission] that the City did not follow its normal policy of progressive discipline in terminating Harris.  Amended Complaint at ¶ 4.10; and

- Plaintiff received good reviews prior to Morris becoming the City Manager, and was previously cleared of politically motivated charges by an independent investigator hired by the City.  Amended Complaint at ¶ 4.12.

Pl.'s Resp. to Defs.' Mot. for Partial Dismissal of Pl.'s First Am. Compl. 22-23.

The First Amendment "forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990) (citing *Elrod v. Burns*, 427 U.S. 347 (1976); and *Branti v. Finkel*, 445 U.S. 507 (1980)).  Political patronage practices that involve promotions, transfers, recalls, and hiring decisions of low-level public employees run afoul of the United States Constitution if such patronage practices are "based on party affiliation and support." *Id.* at 65.  "Although the Supreme Court's decisions involve party affiliation, [the Fifth] Circuit has recognized that the *Elrod-Branti* doctrine applies when an employment decision is based upon support of and loyalty to a particular candidate as distinguished from a political party." *Jordan v. Ector Cnty.*, 516 F.3d 290, 295-96 (5th Cir. 2008) (internal quotation marks, footnote, and citations omitted).  In political patronage cases, the Fifth Circuit "more readily find[s] that the government's interests outweigh the employee's interests where the employee is a policymaker or is confidential." *Wiggins v. Lowndes Cnty.*, 363 F.3d 387, 390 (5th Cir. 2004) (citation omitted).  For purposes of First Amendment cases involving political patronage, a "policymaker is an employee whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." *Id.* (citation omitted).  Further, in determining whether an employee is a policymaker, "consideration should also be given to whether the employee acts as an adviser or formulates

plans for the implementation of broad goals." *Elrod*, 427 U.S. at 368. A confidential employee is one who "stands in a confidential relationship to the policymaking process, e.g., as an advisor to a policymaker, or if he or she has access to confidential documents or other materials that embody policymaking deliberations and determinations, e.g., as a private secretary to a policymaker." *Id.* at 391 (citation omitted).

The focus should be whether the employee is a "policymaker" or a "confidential" employee. *Wiggins*, 363 F.3d at 390. Harris contends that she was not in a policymaking position of confidence. Pl.'s First Am. Compl. ¶ 8.03. She further contends that she was "required to present any substantial policies to Sam Allen, the City Manager, or the City Council for approval, including such details as work hours, overtime, recreation center programs, and money handling policies." *Id.* From this allegation, it appears Harris's discretion in the performance of her duties was limited to a large degree by management or policy determinations made by her superiors. Thus, it appears that Harris is protected by the First Amendment from the conduct allegedly taken by Morris.

In *Gentry v. Lowndes County*, the Fifth Circuit found that a nonelected road manager was a policymaker because he was a department head and supervised road and bridge work in the county; assisted in preparing a budget for his department; hired assistants and employees; bought and leased equipment needed for the operation of the department; and executed the policies of the county board of supervisors, the governing body of the county. 337 F.3d 481, 487 (5th Cir. 2003). In *Gentry,* the court held that the road manager and county administrator were policymakers because they "occup[ied] critical managerial roles in county government, and because their duties strongly influenced the public's view of the elected board of supervisors" and, therefore, "the board [had to] be assured of the trust and loyalty of the road manager and

administrator and [had to] be able to assume the confidentiality, when necessary, of their mutual dealings." *Id.* Further, critical to the court's decision was that the employees' positions "enable[d] them to advance the board's policies, if they act[ed] faithfully, or to undermine those policies by overt or covert opposition." *Id.* at 488. In *Gentry*, both of the high-level employees' employment could be terminated only by the board of supervisors. In *Kinsey v. Salado Independent School District*, the Fifth Circuit held that the discharge of a school superintendent did not violate the First Amendment. 950 F.2d 988 (5th Cir. 1992) (en banc). Crucial to the court's decision was that the superintendent's primary responsibilities were to advise the board, "make recommendations to guide its decisions" and, as chief administrator, "implement its policies and decisions." *Id.* at 995-96. Because of Kinsey's position, the court concluded that he had the power to "make or break" the board's policies. *Id.* at 996. The court also concluded that Kinsey had a confidential relationship with the board. *Id.*

As previously stated, the court is not convinced that Harris falls into the category of a policymaker or confidential employee. Her position with the City, based on the pleadings, is not analogous to that of the road manager in *Gentry* or superintendent in *Kinsey*. As her former position does not fall within the category of the employees in *Gentry* and *Kinsey,* she is protected from the allegedly adverse action taken against her by Morris.

Based on the cases cited by the court, the claim that Harris asserts was clearly established at the time of her termination in May 2011. Assuming that the allegations in the Complaint regarding this claim are true, the court determines that, collectively, they are specific enough for it to reasonably infer that Morris is liable for the misconduct alleged in the Complaint. Moreover, as the amended pleading shows on its face the unreasonable violation of a clearly established right, an assertion of qualified immunity is insufficient to sustain a 12(b)(6) motion.

*Shipp,* 234 F.3d at 912.  Accordingly, Morris is not entitled to a qualified immunity defense with respect to Plaintiff's First Amendment association claim.

The City contends that Plaintiff's First Amendment claim against it should be dismissed because Harris has not alleged that she has been deprived of a federally protected right that was caused by a policy, custom, or practice of the City.  Harris counters that she need not allege that a policy or custom of the City caused her to be deprived a constitutional right when a "governmental entity's final policy and decision maker in a single action directly and intentionally deprives a person of a constitutional right."  Pl.'s Resp. to Defs.' Mot. to Dismiss Am. Compl. 23.  Harris also argues that the court previously decided that the City's charter did not "restrain Morris's actions" with respect to her discharge.  Harris's argument misses the mark.

It is well-settled law that a section 1983 lawsuit brought against a municipality for the deprivation of a constitutional or federally protected right must be based upon an official policy or custom of that municipality.  *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Official policy is defined as:

> 1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.      A persistent, widespread practice of [city] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city] policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the [city] or to an official to whom that body had delegated policy-making authority.

*Id.*  To support a constitutional or federal claim based on a policy or custom of a city, a plaintiff must plead facts that show: "1) a policy or custom existed; 2) the governmental policy makers

actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996) (citation omitted).

The court has pored over Plaintiff's Complaint, and it is devoid of any allegations that Plaintiff suffered the deprivation of a constitutionally or federally protected right as a result of a City policy or custom.  Harris argues in her response that, because Morris was the final policy and decisionmaker, she need not allege that a policy or custom caused her to be deprived of a constitutionally or federally protected right.  In her Complaint, Harris only alleges that "Morris was the final policymaking authority regarding terminations."  Pl.'s First Am. Compl. ¶ 8.02. That the court held in its Memorandum Opinion and Order of September 30, 2012, that Morris had the final say in terminating Harris is quite beside the point.  The court merely held that the City Charter gave that exclusive authority to Morris as the City Manager.  The court did not hold, or even hint, that Morris was a policymaker in its earlier decision.

In advancing her argument, Plaintiff confuses "final decisionmaker" with "policymaker." The Fifth Circuit, however, distinguishes "between final decisionmaking authority and final policymaking authority."  *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008).  That an official has the discretion to make the final decision over a particular function does not necessarily mean that the official has final policymaking authority over that function.  *Id.* at 549 (footnote and citation omitted).  As Plaintiff has not pleaded the minimum allegations required by *Meadowbriar* and does not allege that the City has delegated policymaking authority to Morris, she has failed to state a claim upon which relief can be granted against the City regarding this claim, and dismissal of this claim is appropriate.

### D.     Official Capacity Claims Against Individual Defendants Morris, Smith, Greer, Rushing, and Gray

The Individual Defendants contend that the official capacity claims should be dismissed against them because the City is a party to this action.  The court agrees.

A lawsuit against an individual in his or her official capacity is treated as a lawsuit against the governmental entity of which the individual is an agent, employee, official, or representative.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted).  In this case, the City is already a party to this action.  As the City is a party to this action, it makes no sense to allow the claims against the Individual Defendants in their official capacities.  The official capacity claims against the Individual Defendants are duplicative and unnecessary.  Accordingly, the court will dismiss the official capacity claims against the Individual Defendants.

### E.     Punitive and Exemplary Damages

The City contends that punitive or exemplary damages are not recoverable against it because it is a governmental entity and therefore enjoys immunity.   The court agrees.

A municipality is immune from punitive damages regarding claims brought pursuant to section 1983.  *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 271 (1981).  With respect to Plaintiff's claims under Title VII and section 1981, the City, as a governmental entity, cannot be held liable for punitive damages.  42 U.S.C. § 1981a(b)(1).  Likewise, a governmental entity cannot be held liable for punitive damages for claims of discrimination brought under the Texas Labor Code.  Tex. Labor Code Ann. § 21.2585(b) (West 2006).  Accordingly, the court holds that Plaintiff may not recover punitive damages against the City on any of her claims.

## IV.      Future Motions to Dismiss

Two detailed motions to dismiss have been filed.  The court will not entertain any further motions to dismiss without leave of court, unless it is one for settlement or dismissal of the action or a claim within the action.  The court believes that, unless good cause is shown, dispositive matters should be handled at this stage by way of summary judgment.

## V.      Conclusion

For the reasons herein stated, the court **grants in part** and **denies in part** Defendants' Motion for Partial Dismissal of Plaintiff's First Amended Complaint.  Specifically, with respect to the motion, the court **dismisses with prejudice** Plaintiff's liberty interest claim against Morris, Smith, Greer, Rushing, and Gray because she failed to state a claim upon which relief could be granted as to these Individual Defendants; **dismisses with prejudice** Plaintiff's First Amendment association claim against the City for failure to state a claim upon which relief can be granted; **dismisses with prejudice** Plaintiff's section 1981 claim against Rushing for failure to state a claim upon which relief can be granted; **dismisses with prejudice** all official capacity claims as to Morris, Smith, Greer, Rushing, and Gray; and **dismisses with prejudice** all claims for punitive and exemplary damages asserted against the City.  The court **denies** the motion with respect to Plaintiff's liberty interest claim against the City, and **denies** Plaintiff's section 1981 and First Amendment association claims against Morris.

In light of all claims being dismissed against them with prejudice, Defendants Smith, Greer, Rushing and Gray are no longer parties to this litigation.  The court **directs** the clerk of the court to amend the docket to reflect that these Defendants are no longer parties to this litigation.

**It is so ordered** this 28th day of March, 2014.

Sam A. Lindsay
United States District Judge